| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF NEW YORK | | Civil Action No. |
| JACKSON CUMBY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>SUNBELT RENTALS, INC. )<br>)<br>Defendant. )<br>_____) | | **JURY TRIAL<br>DEMANDED** |

**COMPLAINT AND JURY DEMAND**

## PARTIES

1. The Plaintiff, Jackson Cumby ("Mr. Cumby" or "Plaintiff") is a 63-year-old man who was born in 1960. Mr. Cumby is a resident of the State of North Carolina, residing at 721 Ruston Drive SE, Bolivia, North Carolina, 28422.

2. Defendant Sunbelt Rentals, Inc. (the "Company" or the "Defendant") is a for-profit corporation doing business in the State of New York. The Company is incorporated in North Carolina and its principal office is located at 1799 Innovation Point, Fort Mill, South Carolina, 29715.

3. During the full period Mr. Cumby was employed by the Defendant, Plaintiff lived in New York State.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2615, the Americans with Disabilities Act ("ADA") 29 U.S.C. §1201 et seq., and the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§621 et seq.

5. Venue is appropriate in the Western District of New York as the acts or omissions giving rise to the claims in this Complaint occurred in the Western District of New York.

6. This court has jurisdiction over the Defendant, including, but not limited to, because the Defendant has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing Mr. Cumby in New York, and Mr. Cumby's causes of action stem largely from the Defendant's business transactions within the State of New York. Indeed, Mr. Cumby was employed by the Defendant in the State of New York, was managed and supervised by Defendant in the State of New York, was discriminated against and harassed by the Defendant in the State of New York and was terminated by the Defendant in the State of New York. The Defendant has registered with the State of New York as a foreign corporation doing business in the State of New York.

## STATEMENT OF FACTS

7. On or around April 24, 2017, Mr. Cumby was hired by the Company as a Profit Center Manager.

8. From April 24, 2017, through in or around 2019, Mr. Cumby's work for the Company was based primarily in the Company's facility at 788 W Ridge Rd., Rochester, New York, 14615, which is in Monroe County. From in or around 2019 until his termination, Mr. Cumby's work for the Company was based primarily in the Company's facility at 369 Park Avenue, Corning, New York, 14830, which is located in Steuben County in the Western District of New York.

9. At all relevant times, the Company employed 20 or more employees for 20 or more weeks during the preceding 12 months. As such, the Company was an employer under

federal and state anti-discrimination law, including, but not limited to, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and New York State Human Rights Law ("NYSHRL").

10. Additionally, at all relevant times, the Company employed 50 or more employees during 20 or more calendar workweeks during the relevant calendar years. Accordingly, at all relevant times, the Company was an employer under the Family and Medical Leave Act ("FMLA").

11. At all relevant times, Mr. Cumby was a qualified employee, and his job performance was satisfactory.

12. In or around January 2018, Mr. Cumby shattered his left shoulder after falling from the roof of his home.

13. On January 26, 2018, Mr. Cumby disclosed his shattered shoulder and requested from his direct supervisor, Regional Vice President Taylor Mann ("Mr. Mann"), the reasonable disability-related accommodation of taking a medical leave from work beginning on January 26, 2018, and ending on February 5, 2018, to undergo a shoulder arthroplasty.

14. Upon information and belief, Mr. Mann does not suffer from any disabilities and was not regarded as disabled by the Company.

15. Upon information and belief, Mr. Mann was in his late thirties at this time.

16. Following Mr. Cumby's shoulder arthroplasty, his left shoulder never regained full range of motion and he continued to experience chronic ongoing symptoms and substantial limitations as a result of his condition (his "Chronic Left Shoulder Condition").

17. Mr. Cumby's Chronic Left Shoulder Condition is a physical impairment that at all relevant times substantially limited one or more of Mr. Cumby's major life activities,

including, but not limited to, lifting, pushing, pulling, carrying, throwing, and reaching. In addition, Mr. Cumby's Chronic Left Shoulder Condition at all relevant times substantially limited one or more of his major bodily functions, including, but not limited to, the functioning of Mr. Cumby's muscular and skeletal functions. As such, Mr. Cumby is, and at all relevant times was, disabled under the ADA and NYSHRL.

18. On February 5, 2018, Mr. Cumby returned to work from his medical leave. Mr. Cumby requested from Mr. Mann the temporary disability-related accommodation of being allowed to temporarily work fully remotely, because he was unable to drive until in or around the end of February 2018.

19. Mr. Mann granted Mr. Cumby's accommodation request.

20. In or around the end of February 2018, Mr. Cumby's doctor cleared him to drive. Mr. Cumby returned to working in the office and requested the reasonable disability-related accommodation of not being required to lift more than twenty pounds. Additionally, Mr. Cumby requested the disability-related accommodation of leaving work in the middle of the day twice each week to receive physical therapy for his Chronic Left Shoulder Condition.

21. Mr. Mann seemingly granted Mr. Cumby's accommodation requests.

22. Mr. Cumby attended physical therapy twice each week through in or around 2019.

23. On or around January 31, 2021, Mr. Cumby's performance for the 2020 year was evaluated by District Manager, Eric Groundwater ("Mr. Groundwater").

24. Upon information and belief, Mr. Groundwater does not suffer from any disabilities and was not regarded as disabled by the Company.

25. Upon information and belief, Mr. Groundwater is younger than Mr. Cumby.

26. Mr. Groundwater gave Mr. Cumby an overall rating of "Meet Expectations" for his performance in 2020.

27. In or around 2021, Mr. Cumby's wife Alice Cumby ("Mrs. Cumby"), was bitten by a poisonous brown recluse spider. Mrs. Cumby's poisonous spider bite required ongoing medical care and caused her to suffer from continuous symptoms and health issues.

28. In or around 2021, Mr. Cumby requested time off from work to help Mrs. Cumby travel to and from her medical appointments.

29. In or around 2021, Mrs. Cumby, broke her femur, limiting her mobility.

30. At all relevant times, the Company employed 50 or more employees within 75 miles of Corning, New York, the location at which Mr. Cumby worked.

31. Mr. Cumby was an eligible employee under the FMLA because at all relevant times after April 24, 2018, he had worked for the Company for 12 or more months and had worked in excess or 1,250 hours within the previous 12-month period.

32. In or around 2021, Mr. Cumby requested and applied for continuous family medical leave protected under the FMLA to care for Mrs. Cumby for a period of about seven weeks.

33. Caring for his wife, who was suffering from a serious health condition served as a qualifying condition for Mr. Cumby to take leave protected under the FMLA.  Accordingly, Mr. Cumby was eligible for and entitled to such FMLA leave.

34. The Company allowed Mr. Cumby to take his requested leave protected under the FMLA for about seven weeks continuously.

35. At the end of his approved FMLA-protected leave, Mr. Cumby returned to work.

36. In or around 2021, Mr. Cumby requested from Mr. Mann permission to take intermittent leave protected under the FMLA approximately one day each month to bring his wife to her medical appointments (related to her spider bite wound).

37. Mr. Mann seemingly granted Mr. Cumby's request for intermittent protected leave.

38. In or around August 2021, an employee with less experience than Mr. Cumby, Josh Brooks ("Mr. Brooks"), began training for a Profit Center Manager position. Mr. Cumby was required by Mr. Mann to assist Mr. Brooks in registering for the online management training courses.

39. Upon information and belief, Mr. Brooks does not suffer from any disabilities and is not regarded as disabled by the Company.

40. Mr. Brooks was in his twenties.

41. In or around October 2021, Mr. Cumby grew out his beard. Mr. Cumby's beard was grey and made his old age more prominent.

42. In or around October 2021, Mr. Mann asked Mr. Cumby if he would prefer to live in Florida.

43. Florida is well-known as a State where older individuals move upon their retirement.

44. In response, Mr. Cumby told Mr. Mann he did not want to move to Florida because he wanted to continue working for the Company.

45. During late 2021 and early 2022, Mr. Cumby observed a seemingly discriminatory pattern in which he was being treated more coldly and negatively than other similarly situated younger, non-disabled employees.  This pattern of negative treatment

appeared to be motivated by Mr. Cumby's older age, as well as due to retaliatory bias because Mr. Cumby utilized protected leave and disability-related accommodations. Notably, at this time Mr. Cumby continued to perform his duties at an acceptable level. Indeed, Mr. Cumby' most recent performance review indicated that his performance was satisfactory.

46. Mr. Mann pre-scheduled a safety stand down meeting between Mr. Cumby and all staff members Mr. Cumby supervised on February 17, 2022.

47. Due to unforeseen circumstances, Mr. Cumby was somewhat late in starting the safety meeting that day (February 17, 2022).

48. When Mr. Cumby did attempt to start the safety meeting, he realized there would not be sufficient time to complete the meeting due to an influx of customers beginning to trickle in.

49. Due to the meeting starting late, Mr. Cumby determined that it would be more effective to hold the safety meeting the following day (February 18), and accordingly re-scheduled the meeting for that date.

50. Later, February 17, 2022, Mr. Groundwater suddenly and unexpectedly told Mr. Cumby he was being terminated, supposedly for rescheduling the safety meeting by one day, from February 17, 2022, to February 18, 2022.

51. Mr. Cumby raised protected concerns to Mr. Groundwater that younger, non-disabled employees were not terminated when they missed or rescheduled meetings.

52. In response, Mr. Groundwater gave no justification for the termination other than again noting that Mr. Cumby had rescheduled the meeting by one day.

53. Upon information and belief, there were other non-disabled, younger employees who missed and/or rescheduled meetings, but were not terminated.

54. Notably, the Company has a policy and practice of utilizing progressive discipline, and younger employees are routinely given progressive discipline by the Company before facing potential termination only if misconduct continues after multiple steps of discipline.

55. In contrast, Mr. Cumby was not given any progressive discipline before being terminated for a single minor issue. Even if the Company did consider Mr. Cumby to have somehow committed some sort of misconduct by delaying the safety meeting by one day (which seems implausible), it is notable that the Company failed to follow its normal practice of utilizing progressive discipline for issues of this sort and not summarily terminating (younger) employees for a single minor issue.

56. On or around October 26, 2022, Mr. Cumby timely filed a Charge of Discrimination with the New York State Division of Human Rights ("NYSDHR") (Charge No.: 10220676) which was cross filed with the Equal Employment Opportunity Commission ("EEOC").

57. On or around June 26, 2023, the NYSDHR dismissed this case.

58. On or around July 14, 2023, Mr. Cumby requested a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC").

59. On or around July 17, 2023, the EEOC provided Mr. Cumby with a Notice of a Right to Sue letter.

60. This lawsuit is timely filed.

## COUNT I

### (Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§621, *et seq*.)

### Mr. Cumby v. the Defendant

61. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

62. At all times during his employment, Mr. Cumby was over forty (40) years old.

63. At all relevant times, the Defendant was an employer as defined by federal anti-discrimination laws, including the Age Discrimination in Employment Act ("ADEA"), employing 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

64. The Defendant, by and through its agents, harassed and discriminated against Mr. Cumby with respect to his terms, conditions, and/or privileges of employment, because of Mr. Cumby's age.

65. More specifically, the Defendant subjected Mr. Cumby to adverse actions because of his age (and/or because he was an older individual with a disability, which constituted "age plus" discrimination), including, but not limited to, by subjecting Mr. Cumby to a harassing and hostile work environment, and terminating Mr. Cumby's employment.

66. Upon information and belief, the Defendant replaced Mr. Cumby with a lesser or similarly qualified, younger employee.

67. The Defendant acted with willful and/or knowing indifference to the federally protected rights of Mr. Cumby.

68. As a direct and proximate result of Defendant's violation of the ADEA, Mr. Cumby has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

69. Mr. Cumby seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), liquidated (double) damages, attorney's fees, interest and costs.

## COUNT II

**(Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§1201, *et seq*.)**

**Mr. Cumby v. the Defendant**

70. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

71. At all relevant times, the Defendant employed 15 or more people for 20 or more calendar weeks within the previous 12-month period.

72. The Defendant is an employer under the American with Disabilities Act, 42 U.S.C. §§1201, *et seq*. (hereinafter the "ADA").

73. Mr. Cumby suffers from a chronic shoulder condition. This disability is an impairment which substantially limits one or more of his major life activities, including lifting, reaching, and exercising. Mr. Cumby's disability further substantially impairs his muscular and skeletal functions. Accordingly, Mr. Cumby is disabled under the ADA.

74. Mr. Cumby disclosed his Chronic Left Shoulder Condition to the Defendant, and/or the Defendant was aware of Mr. Cumby's disabilities, and/or the Defendant regarded Mr. Cumby as disabled.

75. The Defendant discriminated against Mr. Cumby due to his disability by subjecting Mr. Cumby to adverse actions, including, but not limited to, subjecting Mr. Cumby to a harassing and hostile work environment, constructive denial of one or more reasonable accommodations requests, and/or terminating Mr. Cumby's employment.

76. Upon information and belief, the Defendant replaced Mr. Cumby with a lesser or similarly qualified, non-disabled employee.

77. The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Mr. Cumby.

78. As a direct and proximate result of the Defendant's violation of the ADA, Mr. Cumby has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life and emotional damages.

79. Mr. Cumby seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), punitive damages, attorney's fees, interest and costs.

## COUNT III
## (Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §§1201, *et seq*.)
## Jackson Cumby v. the Defendant

80.     Mr. Cumby incorporates all paragraphs above and below as if set forth fully herein.

81.     Mr. Cumby engaged in protected activity under the ADA, including, but not limited to requesting and/or utilizing reasonable accommodations for a disability which were intended to allow Mr. Cumby to perform the essential functions of his job.

82.     The disability-related accommodation requests which the Defendant retaliated against Ms. Cumby for seeking and/or utilizing included, but were not limited to, being allowed to work fully remotely temporarily, not being required to lift more than twenty pounds, taking time off from work to undergo surgery, and taking time off from work to attend physical therapy.

83.     The Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Cumby's exercising of, or enjoyment of, one or more rights granted by the ADA.

84.     More specifically, the Defendant subjected Mr. Cumby to adverse actions, including, but not limited to, holding Mr. Cumby to higher and/or more strict standards, issuing Mr. Cumby a poor performance review, denying Mr. Cumby the benefit of progressive discipline prior to termination, and/or terminating Mr. Cumby's employment.

85.     The Defendant willfully violated the ADA because the Defendant knew or should have known its conduct was prohibited by Federal law and/or the Defendant acted with malice and/or reckless indifference to the federally protected rights of Mr. Cumby.

86.     As a direct and proximate result of the Defendant's violation of the ADA, Mr. Cumby has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, loss of enjoyment of life, and emotional damages. Mr. Cumby seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorney's fees, interest and costs.

## COUNT IV
### (Retaliation in Violation of the Family and Medical Leave Act, 29 U.S.C. §2615)
### Mr. Cumby v. the Defendant

87. Mr. Cumby incorporates all paragraphs above as of set forth fully herein.

88. During all relevant times, the Defendant was engaged in an industry affecting commerce and employed 50 or more employees for 20 or more calendar work weeks in each current and/or preceding calendar year.

89. As such, at all relevant times, the Defendant was an employer under the Family and Medical Leave Act (hereinafter "FMLA").

90. At all relevant times, the Defendant employed 50 or more employees within 75 miles of Mr. Cumby's worksite.

91. Mr. Cumby was an eligible employee under the FMLA because at all relevant times after April 24, 2018, he had worked for the Company for 12 or more months and had worked in excess or 1,250 hours within the previous 12-month period.

92. Mr. Cumby's wife suffered from one or more serious health conditions, including, but not limited to, her broken femur.

93. Mr. Cumby was entitled to FMLA leave to care for his wife.

94. Mr. Cumby sought to exercise his rights under the FMLA, including by requesting and utilizing one or more protected leaves under the FMLA.

95. Specifically, Mr. Cumby sought to exercise continuous leave in the form of taking leave to assist his wife.

96. Mr. Cumby also requested intermittent leave in 2021 to assist his wife with her continuing health issues.

97. Mr. Cumby timely notified the Defendant that he would need FMLA leave.

98. The Defendant, including through its agents, retaliated and/or discriminated against Mr. Cumby for requesting and/or utilizing FMLA leave by subjecting Mr. Cumby to adverse actions, including, but not limited to, subjecting Mr. Cumby to a harassing and otherwise hostile work environment, and/or terminating Mr. Cumby's employment.

99. The Defendant's actions, including its violations of the FMLA, were willful and undertaken in bad faith.

100. As a direct and proximate result of the Defendant's violation of the FMLA, Mr. Cumby has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

101. Mr. Cumby seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees and costs.

WHEREFORE, the plaintiff, Jackson Cumby, respectfully prays that this honorable court;

A. Schedule this matter for trial by jury;

B. Find the Defendants liable on all counts;

C. Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D. Award the Plaintiff other monetary damages, including damages for his diminished earning capacity and injury to reputation;

E. Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

F. Award the Plaintiff liquidated damages;

G. Award the Plaintiff punitive damages;

H. Award the Plaintiff his reasonable attorney's fees;

I. Award the Plaintiff interest and costs;

J. Award the Plaintiff all other damages to which he is entitled; and

K. Grant such further relief as is just and equitable.

                              Respectfully Submitted,

                                  Jackson Cumby

                              By his attorneys,

                              THE LAW OFFICES OF WYATT&
                              ASSOCIATES P.L.L.C

Date: October 2, 2023          By: */s/Bridget Dowret*

                              Bridget Dowret
                              Bridget@wyattlegalservices.com
                              NY State Bar: 5978853

                              Benjamin J. Wyatt
                              BWyatt@wyattlegalservices.com
                              New York State Bar: 5604590

                              Micheal Varraso
                              MVarraso@wyattlegalservices.com NY State Bar: 5619291

                              The Law Offices of Wyatt &
                              Associates, P.L.L.C.
                              17 Elm Street, Suite C211
                              Keene, NH 03431
                              Telephone: (603) 357-1111
                              Facsimile: (603) 685-2868

                              New York Office:
                              418 Broadway, 2nd Floor
                              Albany, NY 12207