UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACKSON CUMBY,

                               Plaintiff,

v.

                                 Case No. 23-CV-06565-FPG

                                 DECISION AND ORDER

SUNBELT RENTALS, INC.,

                               Defendant.
_____

## INTRODUCTION

On October 2, 2023, Plaintiff Jackson Cumby ("Plaintiff") brought this action against Defendant Sunbelt Rentals, Inc. ("Defendant" or the "Company"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, the Americans with Disabilities Act ("ADA") 29 U.S.C. § 1201, *et seq.*, and the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621, *et seq.* ECF No. 1 at 1-2. Defendant has moved to dismiss Plaintiff's complaint for failure to state a claim. ECF No. 7. For the reasons set forth below, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

On or about April 24, 2017, Defendant hired Plaintiff as a "Profit Center Manager." ECF No. 1 at 2. Plaintiff worked at the Company's Rochester facility from April 24, 2017 until 2019, and at the Company's Corning facility from 2019, until his termination in February 2022. *Id.* at 2.[2]

---

[1] Courts evaluating a motion to dismiss must accept facts alleged in the complaint as true and draw all reasonable inferences from those facts in favor of the non-moving party. *Nat'l Fed. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 567 (D. Vt. 2015). As such, the facts below are taken from Plaintiff's complaint and accepted as true.

[2] At all relevant times, the Company employed 50 or more employees. *Id.*

In January 2018, Plaintiff "shattered" his left shoulder. *Id*. at 3. On January 26, 2018, Plaintiff disclosed the injury to the Company and requested medical leave from his supervisor, Taylor Mann ("Mann"), from January 26, 2018 until February 5, 2018, because the injury required surgery. *Id*. After the surgery, Plaintiff experienced ongoing symptoms and limitations in his left shoulder. *Id*.

On February 5, 2018, Plaintiff returned to work. *Id*. He requested from Mann the ability to work remotely, until "the end of February 2018[,]" because he was unable to drive. *Id*. at 4. Mann granted that request. *Id*. Toward the end of February 2018, Plaintiff was "cleared" to drive by his doctor, and he returned to the office. *Id*. Upon his return, Plaintiff asked that he not be required to lift more than twenty pounds, and that he be allowed to leave work in the middle of the workday, twice a week, to receive physical therapy for his left shoulder. *Id*. Mann "seemingly granted" these two requests. *Id*.

Plaintiff attended physical therapy twice a week from February 2018 through 2019. *Id*. On or about January 31, 2021, Plaintiff received a "Meet[s] Expectations" rating for his 2020 performance from the Company's District Manager, Eric Groundwater ("Groundwater"). *Id*. at 4-5. Sometime in 2021, Plaintiff's wife was bitten by a poisonous spider, which required her to receive ongoing medical care. *Id*. at 5. Plaintiff requested time off to assist his wife with travel to her medical appointments. *Id*. Sometime after the spider bite, Plaintiff's wife broke her femur, which limited her mobility. *Id*. During this period in which his wife was injured and receiving medical care, Plaintiff applied for approximately seven weeks of continuous family medical leave under FMLA, which was permitted by the Company. *Id*. at 5-6. At the end of the seven weeks, Plaintiff applied for intermittent leave, requesting approximately one day per month, to assist his

wife with travel to her appointments.  *Id*. at 6.  Mann "seemingly granted" Plaintiff's request for intermittent leave.  *Id*.

In August 2021, an employee who was less experienced than Plaintiff, Josh Brooks ("Brooks"), began training for a Profit Center Manager position, and Mann required Plaintiff to help Brooks register for training courses.  *Id*.  Brooks was in his "late twenties."  *Id*.

In October 2021, Plaintiff allowed his beard to grow, which "was grey and made his old age more prominent."  *Id*.  During the same month, Mann asked Plaintiff if he would prefer to live in Florida, to which Plaintiff responded that he would not because he wished to continue working for the Company.  *Id*.

During late 2021 and early 2022, Plaintiff observed a pattern in which he was being "treated more coldly and negatively" than younger, "non-disabled" employees, despite Plaintiff's acceptable performance of his duties.  *Id*. at 7.  On February 17, 2022, a "safety stand down" meeting, pre-scheduled by Mann, was set to occur between Plaintiff and all the staff members which Plaintiff supervised.  *Id*.  Plaintiff was late in starting the meeting, and when Plaintiff did attempt to start the meeting, he realized that there would not be enough time to complete it within the time available.  *Id*.  Plaintiff decided to reschedule the meeting for the next day, February 18, 2022.  *Id*.  After Plaintiff rescheduled the meeting, Groundwater informed Plaintiff that he was being terminated for rescheduling the meeting.  *Id*.  Plaintiff expressed concerns to Groundwater that other younger employees were not terminated for similar conduct.  *Id*.  The Company had a policy and practice of utilizing "progressive discipline" before an employee faced potential termination.  *Id*. at 8.

On October 26, 2022, Plaintiff file a Charge of Discrimination with both the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity

Commission ("EEOC"). *Id*. On June 26, 2023, the NYSDHR dismissed the charge. *Id*. On July 17, 2023, Plaintiff received a Right to Sue letter from the EEOC. *Id*. Plaintiff was 63 years old when the complaint was filed. *Id*. at 1.

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). A district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

When deciding a motion under Rule 12(b)(6), a court ordinarily may not rely on matters outside the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). For the purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel.*

4

*& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

## DISCUSSION

Defendant has moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 7. Defendant argues that Plaintiff has failed to plausibly allege his (i) ADEA age discrimination claim, (ii) ADA disability discrimination claim, (iii) ADA retaliation claim, and (iv) FMLA retaliation claim.[3] For the reasons below, Plaintiff's ADEA claim and FMLA retaliation claim may proceed. Plaintiff's ADA claims are dismissed.

### A. ADEA

Defendant argues that Plaintiff has failed to plausibly allege an age discrimination claim under the ADEA. ECF No. 8 at 12-14. The Court disagrees.

The ADEA bars an employer from discharging an employee because of age. 29 U.S.C. § 623(a) (1976); *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 919, 921-22 (2d Cir. 1981). To establish a prima facie claim of age discrimination under the ADEA, a plaintiff must show that (1) he was within the protected age group (over 40); (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) that such adverse action occurred under

---

[3] Defendant also argues that Plaintiff's ADEA and ADA claims should be dismissed because they are time-barred by the 300-day statute of limitations for filing a charge with the EEOC. ECF No. 7 at 12. Such charges must be filed within 300 days after an alleged unlawful employment action occurs, if a state proceeding has also been initiated. 42 U.S.C. §2000e-5 (e)(1); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999) (finding EEOC and NYSDHR charges filed at same time triggered 300-day statute of limitations).

Here, Plaintiff was terminated on February 17, 2022, and filed a charge with the EEOC and the NYSDHR on October 26, 2022. ECF No. 1 at 8. Because Plaintiff has plausibly alleged, as explained in this Order, that his termination was unlawful, and his EEOC charge was timely filed in connection with his termination, Plaintiff's ADEA and ADA claims are not time-barred by 42 U.S.C. §2000e-5 (e)(1). Certain instances of alleged discrimination fall outside the 300-day window, as Defendant observes, but they are not themselves actionable adverse actions, as discussed in Section A, *infra*.

5

circumstances giving rise to an inference of discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107-08 (2d Cir. 2010). With respect to the element of causation, the plaintiff must establish, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009), and not simply a "contributing or motivating factor." *Gorzynski*, 596 F.3d at 106.

To survive a motion to dismiss, a plaintiff "need not prove discrimination, or even allege facts establishing every element of a prima facie case of discrimination, but [ ] must plead facts that give plausible support to a minimal inference of the requisite discriminatory causality." *Mirinaviciene v. Keuka Coll.*, No. 23-CV-6233-FPG, 2023 WL 8281897, at *4 (W.D.N.Y. Nov. 30, 2023) (internal quotation marks omitted). "More specifically, the plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the conceivable to the plausible." *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 519 (S.D.N.Y. 2017) (internal quotation marks omitted).

Here, at this early stage of proceedings, Plaintiff has plausibly alleged that his termination, which constitutes an adverse employment action, occurred "under circumstances giving rise to an inference of discrimination."[4] *Gorzynski*, 596 F.3d at 107-08. It is undisputed that Plaintiff was terminated by Defendant on February 17, 2022, after Plaintiff rescheduled a meeting. ECF No. 1 at 7. It is likewise undisputed that, in August 2021, an employee who was less experienced than Plaintiff and in his late twenties, Brooks, began training for a Profit Center Manager position. *Id*.

---

[4] It is uncontested that Plaintiff was a (i) member of the protected age group, (ii) qualified for his position, and (iii) experienced an adverse employment action when he was terminated. To the extent Plaintiff claims that other instances of alleged discrimination—alleged training of a younger individual, age-related comment, and generally cold and negative treatment—constitute "adverse actions [,]" the Court rejects such a contention because these instances do not amount to "materially adverse" changes in the terms and conditions of Plaintiff's employment. *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (summary order). Rather, they are, as explained below, allegations relating to "background evidence" giving rise to an inference of discrimination in connection with Plaintiff's termination.

6

at 8. A few months later, after Plaintiff began to look older, Mann asked Plaintiff if he "would prefer to live in Florida[,]" which is a state known to be a residence for older, retired individuals. *Id*. at 6-7. Additionally, during late 2021 and early 2022, Plaintiff claims he began to be "treated more coldly and negatively" than younger employees, despite Plaintiff's acceptable performance. *Id*. at 7. Plaintiff also claims that younger employees were not terminated for rescheduling meetings on a same-day basis and that he did not receive "progressive discipline" before his termination. *Id*. at 8. Viewing these allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, the Court concludes that Plaintiff has plausibly alleged that these combined circumstances give rise to an inference of discrimination in connection with his termination. *Gorzynski*, 596 F.3d at 107-08.

Apart from Plaintiff's termination, the other alleged instances of age discrimination are not themselves separately actionable instances of discrimination, nor do they constitute a "continuing violation," as Plaintiff appears to contend. ECF No. 1 at 9; ECF No. 11 at 10-12. Rather, the other alleged instances of age-related discrimination are allegations relating to "background evidence" for Plaintiff's age discrimination claim in connection with his termination. *McKinney v. Eastman Kodak Co*., 975 F. Supp. 462, 469 (W.D.N.Y. 1997). While there is no "simple test" for what constitutes a "continuing violation" under the ADEA, the "continuing violation" doctrine generally applies to "cases involving specific discriminatory policies or mechanisms." *Id*. (citing *O'Malley v. GTE Service Corp*., 758 F.2d 818 (2d Cir. 1985) (enforcement of discriminatory mandatory retirement system is continuing violation)). "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp*., 10 F.3d 46, 53 (2d Cir. 1993); *see also Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 907 (2d Cir. 1997) (discrete incidents of discrimination not related

to an identifiable policy or practice do not amount to continuing violation unless they are specifically related and allowed to continue unremedied for so long as to constitute a discriminatory policy or practice).

Plaintiff's other allegations are not, singly or in combination, sufficient to establish a continuing violation. Rather, they appear to "discrete instances of alleged discrimination" which fall "short of the kind of policy or practice that must be shown to establish a continuing violation." *Lightfoot*, 110 F.3d at 907. Plaintiff's uncontested allegation that, in August 2021, a younger employee began training for a position that was the same as Plaintiff's does not appear to be related to a discriminatory "policy or practice." *Id*. Likewise, Mann's comment about whether Plaintiff would like to move to Florida is a discrete instance which does not appear to be tied to a policy or practice. Plaintiff's broad allegation that he was "treated more coldly and negatively" than younger employees too vague and generalized an allegation to establish a "continuing violation." *Id*. at 7. Plaintiff's allegation that other employees were not terminated for rescheduling meetings, similarly, lacks specificity and cannot support an inference that Defendant's alleged misconduct amounted to a "continuing violation." *Lightfoot*, 110 F.3d at 907.

Still, however, Plaintiff's age discrimination claim, as it relates to his termination, may proceed. Plaintiff has alleged facts which support a minimal inference of the requisite discriminatory causality in connection with this claim. *Mirinaviciene*, 2023 WL 8281897, at *4. This aspect of Defendant's motion is denied.

### B. ADA

Defendant argues that Plaintiff has failed to plausibly allege (i) disability discrimination and (ii) retaliation, under the ADA. ECF No. 8 at 16-19. For the reasons below, the Court agrees.

### i. Disability Discrimination

"Title I of the ADA prohibits employers from discriminating again[st] any 'qualified individual with a disability because of the disability of such individual' in regard to any aspect of employment.'" *Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) (quoting 42 U.S.C. § 12112(a)). To establish a prima facie case for disability discrimination under the ADA, a plaintiff must show that (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004). Only the fourth element is in dispute. Plaintiff must plausibly allege that he suffered an adverse employment action under circumstances which "give rise to an inference of discrimination[,]" such that the adverse action suffered may have occurred "because of" his disability. *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (summary order); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.").

Here, Plaintiff has not plausibly alleged that he was terminated because of his disability—specifically, his shoulder condition.

As stated, Plaintiff injured his shoulder in January 2018. ECF No. 1 at 3. On January 26, 2018, Plaintiff disclosed the injury and requested medical leave from Mann from January 26, 2018 to February 5, 2018, for the purpose of undergoing surgery. *Id*. Plaintiff experienced ongoing symptoms and limitations in his left shoulder after the surgery, and returned to work on February

9

5, 2018.  *Id*.  Upon his return, he requested permission to work remotely, until "the end of February 2018[,]" because he was unable to drive, and that request was granted.  *Id*. at 4.  After Plaintiff was medically "cleared" to drive, he returned to the office at the end of February 2018.  *Id*.  Upon his return, Plaintiff requested that he not be required to lift more than twenty pounds, and that he be allowed to leave work in the middle of the workday, twice a week, to receive physical therapy for his left shoulder, and these two requests were granted.  *Id*.

Plaintiff attended physical therapy twice a week from February 2018 through 2019.  *Id*.  On or about January 31, 2021, Plaintiff received a "Meet[s] Expectations" rating for his performance in 2020.  *Id*. at 4-5.  Approximately eight months later, in August 2021, Brooks, a non-disabled employee, began training for a position which was the same as Plaintiff's.  *Id*. at 5.  Throughout 2021, Plaintiff alleges that he was "treated more coldly and negatively" than "non-disabled" employees.  *Id*. at 7.

On February 17, 2022, after a period of time beginning in 2021, in which Plaintiff utilized FMLA leave for a seven-week period and then intermittent leave to care for his wife, Plaintiff was terminated from his position for starting a safety meeting late and rescheduling it, as discussed.  ECF No. 1 at 6.  During the months prior to his termination, Plaintiff alleges that he was treated more "coldly and negatively" than "non-disabled" employees.  *Id*. at 7.

Based on this record, the Court concludes that Plaintiff has failed to plausibly allege that his termination occurred under circumstances giving rise to an inference of disability discrimination.[5]  Plaintiff injured his shoulder in January 2018, and he was terminated in February 2022, over four years later.  During 2018, Plaintiff requested four accommodations for that

---

[5] As in the ADEA context, to the extent Plaintiff claims that instances of alleged discrimination—alleged training of a non-disabled individual and the generally cold and negative treatment he experienced—constitute "adverse action[,]" the Court finds that these instances do not constitute "materially adverse" changes in the terms and conditions of Plaintiff's employment.  *Boonmalert*, 721 F. App'x at 32.

10

disability—(i) medical leave for the purpose of undergoing surgery, (ii) the ability to temporarily work remotely, (iii) a restriction on certain physical activity in the workplace, and (iv) permission to attend physical therapy twice a week during the workday—each of which was granted. Plaintiff presents no plausible allegations that these requests were "constructive[ly]" denied, nor that they were "seemingly granted," as he appears to allege in his complaint. ECF No. 1 at 11. No allegations of disability-related discrimination are identified during the years of 2019 and 2020. Plaintiff appears to have attended physical therapy twice a week "in or around 2019," but even accepting this allegation as true, over two years elapsed after his physical therapy concluded and he was terminated in February 2022. ECF No. 1 at 4. Plaintiff does not allege that his restriction on lifting items impacted the performance of his duties, nor that the restriction continued past 2018.

Plaintiff has alleged that he was treated more "coldly and negatively" than non-disabled employees throughout 2021 and 2022, but these allegations, as stated, are too vague and general to "raise a right to relief about the speculative level[,]" absent other plausible allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To be sure, Plaintiff alleges that other "non-disabled" employees were not terminated for starting meetings late and rescheduling them, but Plaintiff alleges no specific facts plausibly suggesting that disability-related discriminatory animus played a motivating role in Defendant's decision to terminate his employment for that reason, beyond his assertion that unidentified others were treated with leniency for the same conduct. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000) (applying the mixed-motive causation standard articulated in the Civil Rights Act of 1991 to claims of discrimination under the ADA); *see Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order).

Therefore, even viewing the allegations presented in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court concludes that Plaintiff has not plausibly alleged a disability discrimination claim under the ADA.

### ii. Retaliation

Plaintiff's ADA retaliation claim suffers from similar deficiencies. Because Plaintiff has failed to plausibly allege a causal connection between his engagement with activities protected by the ADA and the adverse employment action he was subjected to by Defendant, Plaintiff's ADA retaliation claim is dismissed.

To "establish a prima facie case of retaliation, [Plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). "[A] plaintiff bringing a retaliation claim under … the ADA … must plausibly allege that the retaliation was a but-for cause of the employer's adverse action." *Mehta v. City of New York*, No. 1:19-CV-03857-NG-VMS, 2022 WL 280460, at *7 (E.D.N.Y. Jan. 31, 2022) (quotation omitted); *see Garcia v. Lewis Tree Serv., Inc.*, No. 6:21-CV-06393 EAW, 2022 WL 717861, at *8 (W.D.N.Y. Mar. 10, 2022).

As a preliminary matter, Plaintiff alleges that he suffered "adverse actions" in that he was held to "higher and/or more strict standards," issued a "poor performance review," and that his employment was terminated, and that it was terminated without progressive discipline. ECF No. 1 at 12.[6] Because Plaintiff's termination is the only "materially adverse" employment action

---

[6] Because no other performance review is mentioned in the complaint, the Court construes Plaintiff's claim that he received a "poor performance review" to be referencing his 2021 "Meet[s] Expectations" rating for performance in 2020. ECF No. 1 at 4-5. The "higher and/or more strict standards" Plaintiff references are not explicitly or implicitly identified. *Id.* at 12.

12

alleged, the Court proceeds to analyze only whether Plaintiff has plausibly alleged the fourth prong of a retaliation claim in connection with his termination. At issue is whether Plaintiff has adequately alleged a "causal connection" between his termination and ADA-protected activities. *Treglia*, 313 F.3d at 719.

Plaintiff's ADA-protected activities are alleged to be the accommodations he received in 2018 and 2019 in connection with his shoulder surgery: (i) medical leave, (ii) the ability to work remotely, (iii) a restriction on physical activity, and (iv) permission to attend physical therapy twice a week through 2019. Each of these accommodations was provided by Defendant. Plaintiff was terminated in February 2022, over two years after his physical therapy accommodation is alleged to have concluded, and approximately four years after the others were requested, and approved. *See* ECF No. 1 at 4. Contrary to Plaintiff's claim, an inference of retaliation for engaging in these protected activities cannot be drawn because the alleged adverse action is not sufficiently close in time to the protected activity. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("Action taken […] 20 months later suggests […] no causality at all."); *see also Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) ("To establish a causal connection on the basis of temporal proximity, the adverse action must be very close in time to the protected activity. The Second Circuit has not established a bright line to define the outer limits beyond which a temporal relationship is too attenuated. However, the passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line." (quotations omitted; collecting cases)).

Because Plaintiff fails to plausibly allege a causal connection between Plaintiff's engagement with ADA-protected activities and his termination, Plaintiff's ADA retaliation claim is dismissed.

13

### C. FMLA Retaliation

Plaintiff alleges that Defendant retaliated against him because he used FMLA leave. ECF No. 1 at 13-15. Defendant argues that Plaintiff has failed to plausibly allege a retaliation claim under FMLA. ECF No. 8 at 19-20. Though this claim is similar to Plaintiff's ADA retaliation claim, it survives dismissal.

The Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, "provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 165-66 (2d Cir. 2017). FMLA provides that during any twelve-month period, an employee is entitled to 12 weeks of leave because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

"The FMLA also 'creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction should that employer interfere with, restrain, or deny the exercise of FMLA rights.'" *Woods*, 864 F.3d at 166 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation marks omitted)). "FMLA claims come in at least two varieties: interference and retaliation." *Woods*, 864 F.3d at 166 (citations omitted); *Fraccica v. HSBC N.A. USA*, No. 20-CV-858-LJV-LGF, 2023 WL 7927969, at *5 (W.D.N.Y. Oct. 24, 2023).

"To establish a prima faci[e] case of FMLA retaliation, a plaintiff must establish that (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch.*

14

*Dist., No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (internal quotation marks omitted). With respect to this fourth element, "a plaintiff must show 'a causal connection between the protected activity and the adverse employment action.'" *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (summary order) (quoting *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (setting forth the requirements for a retaliation claim under Title VII)); *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (applying standard developed in Title VII retaliation cases to an FMLA retaliation claim). Only the fourth element is in dispute.

In his complaint, Plaintiff alleges that he requested seven weeks of FMLA leave "in or around" 2021 to assist his wife with medical needs caused by a poisonous spider bite and a broken leg. ECF No. 1 at 5-7. Plaintiff does not allege the month or day of this initial leave request, though it appears to have been requested sometime after Plaintiff's January 31, 2021 performance review with Groundwater. *Id*. at 4 (chronologically organized statement of facts). After the seven weeks concluded, at some point in 2021, Plaintiff requested intermittent FMLA leave, requesting approximately one day per month, to continue assisting his wife with travel. *Id*. at 6. Each request was granted by the Company in 2021. *Id*. Plaintiff's complaint appears to allege, but does not expressly state, that this intermittent leave continued for the remainder of Plaintiff's employment with the Company. *Id*. at 6.[7] "During late 2021 and early 2022," Plaintiff alleges that he was treated negatively "due to retaliatory bias because [Plaintiff] utilized protected leave[.]" *Id*. at 7. Plaintiff alleges that Defendant "retaliated" against Plaintiff for "requesting and/or utilizing FMLA leave" by subjecting Plaintiff to a "harassing and otherwise hostile work environment," and "terminating [Plaintiff's employment]" in 2022 after Plaintiff started a meeting late and rescheduled it. *Id*. at 14. As stated, Plaintiff was terminated on February 17, 2022.

---

[7] Plaintiff states this in his opposition memorandum, *see* ECF No. 12 at 16, but the Court is generally limited to the allegations in Plaintiff's complaint at the motion to dismiss phase. *See Chambers*., 282 F.3d at 153.

Here, Plaintiff has plausibly alleged a FMLA retaliation claim because his participation in FMLA-protected intermittent leave appears to have been active when he was terminated, such that Plaintiff's engagement with a FMLA-protected activity may be sufficiently close in time to the adverse employment action which was taken. Despite the lack of a close temporal proximity between (i) Plaintiff's initial requests for seven consecutive weeks of leave, then one day per month, sometime in 2021, and (ii) his termination in February 2022, Plaintiff has alleged "sufficient factual material" to "push the misconduct alleged in the [complaint] beyond the realm of the conceivable to the plausible" because his use of FMLA leave may have been active when he was terminated. *Downey*, 238 F. Supp. 3d at 519.

First, it is mathematically plausible that Plaintiff's use of FMLA-protected leave was active at the time of his termination, as Plaintiff's complaint suggests. ECF No. 1 at 6. During any 12-month period, an eligible employee is entitled to 12 weeks of leave under FMLA, which may be taken intermittently if medically necessary. 29 U.S.C. § 2612(a)(1)(D). It is undisputed that Plaintiff used seven weeks of FMLA leave in 2021, then requested one day per month of intermittent leave, which began at the conclusion of the initial seven weeks. ECF No. 1 at 6. Based on the allegations in Plaintiff's complaint, Plaintiff remained entitled to five weeks of FMLA leave, or 35 days, after the initial seven-week period, which Plaintiff may plausibly have been using at the time of his termination in February 2022.

Second, and relatedly, Plaintiff has adequately alleged, at this early stage of proceedings, "circumstances giving rise to an inference of retaliatory intent" in connection with this claim. *Donnelly*, 691 F.3d at 147. Unlike Plaintiff's ADA-protected accommodations, which Defendant provided and Plaintiff utilized long before any cognizable adverse action was taken against him, Plaintiff has plausibly alleged that "the [FMLA] protected activity was closely followed in time

16

by the adverse action" such that Defendant may have attempted to retaliate for its use. *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996). Based on the allegations in the complaint, and viewing all facts in the light most favorable to Plaintiff, it is plausible that Defendant's termination of his employment was "causally connected" to his use of protected leave, culminating in his use of FMLA leave though 2022. *Perry*, 424 F. App'x at 25. It is at least plausible that Defendant's termination of Plaintiff's employment, absent any prior disciplinary action, may have been pretextual.

Accordingly, Plaintiff's FMLA retaliation claim may proceed. This aspect of Defendant's motion to dismiss is denied. In reaching this conclusion, the Court neither expresses nor implies any view as to the ultimate merits of Plaintiff's claim, but holds only that Plaintiff has presented sufficient evidence to permit a plausible inference to be drawn that Defendant terminated Plaintiff because he utilized protected FMLA leave. *See Donnelly*, 691 F.3d at 153.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's ADEA claim and FMLA retaliation claim may proceed. Plaintiff's ADA claims are dismissed. Defendant shall answer Plaintiff's complaint on or before June 28, 2024.

IT IS SO ORDERED.

Dated: May 28, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York